# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATHARSIS ON THE MALL, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>SALLY JEWELL, SECRETARY OF INTERIOR; ROBERT A. VOGEL, REGIONAL DIRECTOR OF THE NATIONAL PARK SERVICE, NATIONAL CAPITAL REGION,<br><br>    Defendant. | Civil Action No.:<br><br>**VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**<br><br>**JURY DEMAND** |

## INTRODUCTION

1.  This is a civil rights action for preliminary and permanent injunctive relief to protect the First Amendment rights of the Plaintiff demonstrators to ceremonially burn their wooden temple dedicated to veterans and PTSD survivors on the Washington Monument lawn of the National Mall. Defendants unconstitutionally restrict the Plaintiffs' rights by their newly-adopted requirements limiting the size and scale of ceremonial bonfires, which involve content-based discrimination, and are not narrowly-tailored to achieve the Defendants' legitimate interests. These constitutional defects give rise to both facial and as-applied constitutional challenges to Defendants' discriminatory requirements.

2.  On, November 8, 2016, at the proverbial 11th hour, Defendant Vogel denied Plaintiffs' internal appeal to perform their annual ceremonial bonfire, scheduled for November 12, 2006, despite the NPS having permitted the Plaintiffs to do the same activity one year ago, and despite the DC Fire & EMS officials' consistent statements (including at the meeting on November

1

8, 2016 to determine Plaintiffs' internal appeal), that the burn activity was performed safely last year and can be performed safely again given adequate precautions and supervision.

3. Plaintiffs therefore bring this complaint for immediate injunctive relief from NPS's newly adopted requirements so that they may once again be permitted to perform their ceremonial temple burn, the core expressive activity of their demonstration, with the oversight and in compliance with the inspection and permitting requirements of DC Fire & EMS. NPS's stated concerns of safety and turf protection have been shown to be unfounded, both by their safe, successful ceremony last year and hundreds of similar permitted burn ceremonies executed safely on federally-controlled lands elsewhere, and thus they should not be permitted to justify banning Plaintiffs' expressive activity.

## JURISDICTION AND VENUE

4. This action raises federal questions under the United States Constitution, particularly violations of the Free Speech Clause of the First Amendment.

5. This court has original jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331 and 1346.

6. This Court has authority to grant the requested injunctive and declaratory relief under 28 U.S.C. §§ 2201 - 2202; attorney's fees and costs under 28 U.S.C. § 2412 and the Equal Access to Justice Act.

7. Venue is proper in the U.S. District Court for the District of Columbia under 28 U.S.C. § 1391(e), because the Defendants reside within the District of Columbia.

## THE PARTIES

8. Plaintiff Catharsis on the Mall, LLC ("Catharsis LLC" or "Plaintiff") is a limited liability company duly incorporated under the laws and regulations of the District of Columbia.

Catharsis LLC is a board-managed entity created and maintained to serve the administrative needs involved in producing the annual vigil and political demonstration, Catharsis on the Mall. Catharsis LLC is the applicant organization for National Park Service, National Capital Region ("NPS-NCR") Demonstration Application Number 16-0379, submitted December 9, 2015 ("Permit Application"), which relates to the proposed First Amendment activity that Defendants seek to limit.

9. Defendant Sally Jewel is sued in her official capacity as Secretary of the United States Department of Interior. The Department of the Interior is an executive department of the U.S. government located in Washington, D.C. It is headed by Defendant Jewel and has the responsibility, among others, to manage public parks and public lands. It oversees multiple governmental bureaus, one of which is the National Park Service.

10. Defendant Robert "Bob" Vogel is sued in his official capacity as Regional Director of the National Capital Region of The National Park Service ("NPS"). Among other things, he is charged with the responsibility of administering NPS and governmental policies concerning the National Mall and Memorial Parks. Mr. Vogel is also responsible for granting or denying requests for exemptions to NPS policies and regulations made by permit applicants. He is the official that denied Catharsis LLC's request for exemptions from the NPS's requirements related to bonfires which are the subject of the Plaintiff's instant First Amendment challenge.

## FACTUAL ALLEGATIONS

11. Catharsis on the Mall ("Catharsis" or "the Vigil") is an annual 72-hour political demonstration and vigil for veterans' and PTSD survivors' access to the treatments they need to heal. Catharsis is scheduled to take place over Veteran's Day Weekend from Friday, November 11, 2016 to Sunday, November 13, 2016 on the north lawn of Washington Monument grounds of

the National Mall.  Catharsis is a free event, open to citizens of all ages, with a focus on community engagement, community building, and healing.

12.     The first Catharsis ("Catharsis 2015") took place last year, November 20, 2015 through November 22, 2015, also on the north lawn of Washington Monument grounds.  Catharsis 2015 protested the War on Drugs and featured speakers, performances, and art installations related to the harms caused by the War on Drugs.

13.     The centerpiece of Catharsis 2015 was the "Temple of Essence," a custom-built wooden structure approximately 12 feet tall, 10 feet wide, and 10 feet long, with an ornamental carved exterior and a single interior room resembling a prison inmate's cell, complete with wooden bed and toilet.  The Temple of Essence was designed by artist Michael Verdon and constructed by a team of volunteers.  The purpose of the Temple of Essence was to be ceremonially burned on Saturday night at the climax of the vigil.  Mr. Verdon designed the Temple of Essence to transform upon being set fire to resemble a prison cell burning down, to symbolize the vigil participants' call to change our system of mass incarceration.

14.     Catharsis 2015 was granted a First Amendment permit by the NPS, including for the temple burn ceremony ("Temple Burn") that the NPS is now attempting to ban.  As part of the permitting process, Catharsis LLC was required to submit a detailed fire safety plan with information of the temple structure and materials, fueling details, burn logistics and preparation, schedule, safety precautions and safety crew roles.  DC Fire & Emergency Medical Services ("DC FEMS") issued permits to burn the Temple of Essence after reviewing Mr. Verdon's burn safety plan and completing a site inspection of the temple structure.

15.     At midnight on Saturday, November 21, 2015, the Temple of Essence was burned as planned, under the direction of Mr. Verdon and his experienced fire safety team, and under the

supervision of the NPS and DC FEMS personnel. In addition to on-site fire safety personnel, DC FEMS inspector and fire extinguishing equipment, a DC FEMS "brush truck" unit was also stationed on site in case of emergency. Fire safety personnel formed a perimeter around the bonfire to maintain adequate audience separation. Paraffin wax, a commonly-utilized fuel accelerant, was utilized to facilitate fast and even combustion of the fuel. Corrugated steel sheets were placed underneath the Temple of Essence to provide a base to catch debris and protect the National Mall grass turf beneath. The Temple of Essence burned safely for approximately 2 hours without incident, before being extinguished by DC FEMS personnel. The Catharsis fire safety team removed the corrugated steel sheets and cleaned the turf of all remaining debris and ashes using rakes. A magnetic roller was used to remove any hardware pieces. Despite the fire being put out by DC FEMS earlier than recommended by Mr. Verdon, which caused a greater amount of ash soot to collect on the grass, within 24 hours after the Leave No Trace cleaning efforts, the turf beneath the burn area showed hardly any visible signs of the bonfire.

16. Following Catharsis 2015, both the NPS and DC FEMS expressed satisfaction with the event and the temple burn. In fact, upon receiving Catharsis LLC's permit application for Catharsis 2016, which included plans for a second Temple Burn, NPS responded in writing that Catharsis 2015 "overall was successful" and provided only minor recommendations for improving the event and reducing hazardous incidents. DC FEMS, in multiple conversations and meetings with the Catharsis LLC Board and NPS, have stated that the Catharsis 2015 temple burn was accomplished safely and have expressed full confidence that the Temple Burn can be accomplished safely in the future if proper procedures and precautions continue to be followed.

17. This year's Catharsis Vigil will take place in the same location as Catharsis 2015 and will once again include speakers and art installations, as well as a "March for PTSD Research"

traversing around the Capitol and back to the site. As before, the central feature of the Vigil is the ceremonial "Temple of Rebirth" (the "Temple"), also designed by Mr. Verdon. The Temple resembles a Phoenix, the mythical bird symbolizing hope and rebirth, and represents the second chance at life that veterans and PTSD survivors deserve to have access to through healing modalities and research, including ones currently prohibited by government policies. Vigil participants are invited to ritually place letters and symbols inside the Temple and write messages on its various surfaces expressing their personal struggles with trauma and PTSD, frustrations with government policy, and prayers for change. These messages and expressions are left as offerings to be symbolically released on Saturday night, November 12, 2016, when the Temple is planned to be burned, transforming when set fire to resemble a flaming Phoenix.

18. Like all temples constructed in the Burning Man artistic tradition, the purpose of the Temple of Rebirth is to be burned. Burning the temple is what makes it a Burning Man temple. Mr. Verdon, as part of an experienced fire safety team, has successfully designed and burned over a dozen such temples, ranging in size from 10 ft. in diameter and 12 ft. in height up to 99 ft. in diameter and 82 ft. in height. Mr. Verdon and his team have never presided over a serious injury or significant safety hazard occurring during one of Mr. Verdon's temple burn ceremonies.

19. The proposed Temple dimensions are listed as 24 feet tall, 12 feet wide and 12 feet long,[1] however only a small amount of the sacred structure is actually this large. The design quickly tapers off at 6 feet in height. Almost everything above 6 feet is within a 12 feet wide by 12 feet long space. This added a great deal of interior space without widening the structure. The requested dimensions are well-within those typical of temple burns Mr. Verdon has led in the past, and is

---

[1] At the November 8, 2016 meeting with Defendant Vogel at which he denied Plaintiff's exemption request, and in previous memoranda supplied to the NPS, Plaintiff represented the dimensions of the Temple to be 30 feet tall, 24 feet wide, and 24 feet long. Due to final permit negotiations and preparations with NPS on November 9, 2016, Plaintiff revised its proposed Temple structure to be smaller.

substantially smaller than the temple burns and other large effigy burns routinely permitted for decades by the Bureau of Land Management at the annual Burning Man event in the Black Rock Desert, Nevada. The Burning Man effigy and temple burns follow similar safety precautions and audience perimeter guidelines as Mr. Verdon utilized at Catharsis 2015 and proposes to utilize for the instant Temple Burn.

20. On December 9, 2015, members of the Catharsis LLC Board submitted the Permit Application for Catharsis to the NPS, requesting to reserve the location on the north lawn of the Washington Monument from November 3, 2016 through November 20, 2016. The "Plan for proposed activity" section of the Permit Application included "Erection of temporary structures and sound systems for speakers, music, cathartic dance, and erection of art installations including a temple to be burned" and listed the Catharsis 2015 permit as a reference for activity examples. The NPS acknowledged via email that it received the Permit Application on December 11, 2015.

21. On December 15, 2015, NPS sent an email to Robert Haferd, Catharsis Board Member, stating that "the event [Catharsis 2015] presented many new challenged but overall was successful," acknowledging receipt of the Permit Application, and providing the NPS Safety Manager's observations and recommendations for improvements to the event, including recommendations for improving the Temple Burn process.

22. Between December 2015 and October 2016, NPS and representatives from Catharsis exchanged regular correspondence and met on multiple occasions to discuss the proposed activities for Catharsis, including the Temple Burn. Whenever the Temple Burn was discussed, NPS stated that it would require certain changes and additions to the burn pad underneath the structure and other such changes, however at no time did NPS suggest that the temple burn would be prohibited or that the size of ceremonial bonfires would be restricted.

23. On October 12, 2016, less than a month before the Catharsis build was scheduled to begin, NPS and Catharsis organizers met at NPS's DC office to discuss the proposed activity and permit requirements. At this meeting, for the first time, NPS informed the Catharsis team that it had adopted new requirements for bonfires and fire safety in August 2016, found at NPS-NCR Special Event and Tent Requirements, Version 8, Section 16 "Bonfire / Recreational Fires" ("Section 16"). These requirements are not publicly-available, and are not formally-incorporated as part of the NPS's regulations. Section 16's "Bonfire Requirements" provides restrictions regarding fuel size, maximum duration, audience separation, and permissible materials, and required safety precautions of bonfires, which it defines as "an open burning fire, constantly attended outdoor fire utilized primarily for ceremonial purposes that has a maximum fuel area of 5 feet in diameter by 5 feet in height." At no point prior to this meeting had NPS made any indication whatsoever that it was adopting new requirements that would severely restrict the Temple Burn. Section 16's "Fire Safety Requirements" provide the following restrictions on ceremonial bonfires:

    a. Maximum fuel area of 5 feet in diameter and 5 feet in height.

    b. Maximum distance to structures, 50 feet

    c. Maximum distance to any woodland, 150 feet

    d. Maximum audience separation from the bonfire, 4 x the flame height, as designated by NPS staff

    e. Maximum duration, 3 hours

    f. The bonfire shall be constantly attended until completely extinguished

    g. A minimum of two 2 ½ gallon pressurized water extinguishers … or a garden hose or water truck shall be available on site.

    h. Burn only dry, well-seasoned wood or similar clean burning wood and ignite with small quantity of paper

    i. Combustible or flammable liquids, or other hazardous materials, shall NOT be used to aid the ignition of the bonfire, open burning or recreational fire.

    j. Permits will be issued after a satisfactory site inspection.

    k. Periodic spot inspections and additional safety precautions shall be directed by NPS staff, AHJ or local fire department personnel.

24. In the October 12th meeting, NPS Park Ranger Leonard Lee, designated primary point of contact for Catharsis, instructed Catharsis to submit its request for exemptions from the newly-adopted requirements to NPS Superintendent Gay Vietzke. On October 14, 2016, the Catharsis Board sent an email to the NPS contacts requesting a meeting with Superintendent Vietzke and DC FEMS in advance of submitting a formal request. NPS did not respond to this email until October 25, 2016, at which time Mr. Lee stated that he would request a meeting be scheduled as soon as possible. On the same day, Mr. Lee contacted the Catharsis Board by telephone and, contradicting prior instructions, informed it that the request for exemptions would need to be submitted formally to Robbin Owen, NPS Chief of the Permits Division. On October 26, 2016, Catharsis Board submitted its formal memorandum requesting exemptions from the NPS's newly-adopted fire and turf requirements to Ms. Owen and requested a meeting. A meeting was scheduled for November 2, 2016.

25. On November 2, 2016, representatives of the Catharsis Board and DC FEMS met with NPS at NPS's Washington, DC headquarters. Neither Ms. Owen nor Ms. Vietzke was present for the meeting. Contradicting its previous statements again, Mr. Lee stated at this meeting that none of the aforementioned NPS personnel had the authority to supersede the requirements from

which Catharsis seeks exemptions, and therefore Catharsis's request for exemptions had not been considered. He instructed Catharsis that it must instead submit its request for exemptions to Regional Director of the National Capital Region, Robert Vogel. Catharsis submitted its request for exemptions to Mr. Vogel that same day.

26. At the November 2, 2016 meeting, DC FEMS represented to the NPS that the proposed Temple Burn plan could be executed safely and permitted by DC FEMS, and that DC FEMS was prepared to supervise the burn as proposed by Catharsis. DC FEMS stated that it was required, however, to defer to the NPS's requirements as NPS is the primary permitting agency.

27. A meeting to determine Catharsis's request for exemptions was scheduled for November 8, 2016. Catharsis organizers were told by NPS that the meeting could not be held earlier due to a mandatory doctor's appointment keeping Mr. Vogel out of the office on Monday, November 7, 2016.

28. On November 8, 2016, the day Catharsis LLC's permit was scheduled to begin, Regional Director Vogel denied Plaintiff's request for exemptions to its Bonfire Regulations at the scheduled meeting at NPS-NCR headquarters at 1100 Ohio Drive SW, Washington DC, 20242. Catharsis organizers met with NPS National Capital Regional Director Bob Vogel, Superintendent Gay Vietzke, Chief of Permits Division Robbin Owen, NPS-NCR Fire Marshalls Jim King and Raul Castillo, and NPS's turf specialists for the region, Michael Stachowicz. DC Fire & EMS officials Captain Jerome Young, Sergeant Robert Kearney, and Lieutenant Aaron Hazel also attended the meeting.

29. At the meeting, Mr. Vogel stated that his reasons for denying Catharsis's request were due to the safety concerns, his desire to follow with the DC Fire & EMS Code (which

similarly limits bonfires to 5ft. x 5ft. size), and concerns about turf protection. Mr. Vogel did not deny that the he has the complete discretion and authority to permit the temple burn to proceed.

30. When questioned as to whether the proposed temple burn was safe, DC Fire & EMS Sergeant Robert Kearney stated, without reservation that "the fire can be done safely." He stated, however, that DC FEMS required the approval of the NPS before it could endorse the activity. The other two DC FEMS officers expressed the same position, stating that "We [DC FEMS] can put this fire out, but we need the other agency's consent." NPS Assistant Fire Marshall Castillo expressed concerns that the temple burn is unsafe. When asked for specifics, he mentioned the possibility of "flying embers" and "it [the fire] could distract traffic." NPS Fire Marshall King also expressed that he did not feel the fire could be done safely. When Mr. King was asked what the differences were between the National Mall and the much larger temples that are permitted and burned safely each year with similarly-sized perimeters and open areas in the Black Rock Desert, he stated that the weather was different and that the two places cannot be compared. No specific explanation was given as to why the NPS's turf protection concerns remain despite the existence of a burn pad.

31. The NPS's concerns are <u>manifestly</u> illegitimate given the long history of successful, safe effigy and temple burns performed by Michael Verdon and his team, in particular those permitted on federal lands, including the permitted temple burn at Catharsis 2015 on the National Mall just last year that DC Fire & EMS has consistently expressed was entirely safe. DC Fire & EMS has maintained that the burn last year was safe upon on-site inspection and Plaintiffs request the same fair opportunity to engage in a safe First Amendment activity after DC FEMS gives its clearance upon on-site inspection this year.

32. Section 16's 5ft wide by 5ft tall maximum fuel size does not provide Plaintiffs with an adequate avenue to perform their expressive activity. To be a temple, participants must be able to engage with the structure, go inside its walls, and utilize it as a sacred interior space.

FIRST CLAIM FOR RELIEF

Violation of First Amendment (Free Speech)

**TEMPORARY IMMEDIATE INJUNCTION REQUESTED**

33. Plaintiff realleges and incorporates by reference all previous allegations.

34. This is a claim arising under United States Code, Title 42, Section 1983, wherein Plaintiff seeks prospective injunctive relief from a deprivation under color of law of a right, privilege, or immunity secured to it, respectively, by the First and Fourteenth Amendments to the Constitution.

35. The Defendants' actions and threatened actions to enforce NPS's Special Event and Tent Requirements against the plaintiff violate the freedom of speech guaranteed by the *First Amendment* and *Fourteenth Amendment* of the United States Constitution.

36. Defendant NPS's Special Event and Tent Requirements, Version 8, Section 16 "Bonfire / Recreational Fires" constitutes facially invalid, content-based restrictions on constitutionally-protected speech.

37. Defendants' requirements and corresponding policies and practices as applied to Plaintiff's proposed Temple Burn demonstration constitute impermissible content-based restrictions on constitutionally-protected speech in a public forum.

38. Defendants' requirements and corresponding policies and practices as applied to Plaintiff's proposed Temple Burn demonstration are not narrowly tailored to serve compelling

governmental interests, and burden substantially more of the Plaintiff's and Catharsis attendees' protected speech than is necessary to further the government's legitimate interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court order the following relief and remedies:

(1) Declare that NPS-NCR Special Event and Tent Requirements, Version 8, Section 16 is unconstitutional, void, without effect, and unenforceable.

(2) Declare that NPS-NCR Special Event and Tent Requirements, Version 8, Section 16, as applied to Plaintiff, is unconstitutional.

(3) Grant a temporary restraining order, preliminary injunction, and permanent injunction prohibiting the Defendants, as well as their officers, agents, employees, attorneys, and all persons in active concern or participation with them from enforcing NPS-NCR Special Event and Tent Requirements, Version 8, Section 16.

(4) Grant a temporary restraining order, preliminary injunction, and permanent injunction prohibiting the Defendants, as well as their officers, agents, employees, attorneys, and all persons in active concern or participation with them from enforcing NPS-NCR Special Event and Tent Requirements, Version 8, Section 16 against Plaintiff so as to prohibit Plaintiff from engaging in its proposed Temple Burn demonstration.

(5) Waive the requirement for the posting of a bond as security for entry of preliminary relief.

(6) Award Plaintiff the costs of this action and reasonable attorney's fees as may be allowed by law.

(7) All other such relief as the Court deems to be just and equitable.

DATED this 10th day of November, 2016, at Washington, District of Columbia.

Respectfully submitted,

_____/s/_____
Robert N. Haferd, Esq.
Attorney for Plaintiff

## JURY DEMAND

Catharsis hereby demands trial by jury as to all issues so triable.

Respectfully submitted,

DATE: November 10, 2016

                                      CATHARSIS ON THE MALL, LLC
                                      By Counsel

                                      _____/s/_____
                                      Robert N. Haferd (D.C. Bar No. 1013073)

                                      LAW OFFICE OF ROBERT N. HAFERD, ESQ.
                                      693 32nd Street
                                      Oakland, CA 94609
                                      Telephone: (202) 750-1665
                                      Fax: (208) 379-8639

                                      Attorney for Plaintiff