## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CATHARSIS ON THE MALL, LLC,

|  |  |
|---|---|
| Plaintiff, | Civil Action No.: 16-cv-02231 |
| vs. | **APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| SALLY JEWELL, SECRETARY OF THE INTERIOR; ROBERT A. VOGEL, REGIONAL DIRECTOR OF THE NATIONAL PARK SERVICE, NATIONAL CAPITAL REGION, | |
| Defendants. | **REQUEST FOR EXPEDITED HEARING** |

Plaintiff Catharsis on the Mall, LLC ("Catharsis LLC") hereby moves this Court to enter a Temporary Restraining Order and/or Preliminary Injunction enjoining the Defendant from enforcing National Park Service-National Capital Region ("NPS-NCR") Special Event and Tent Requirements, Version 8, Section 16 ("Section 16" or "Bonfire Requirements") to ban Plaintiff demonstrators from performing their annual ceremonial temple burn on the National Mall to raise awareness for the rights of veterans and PTSD survivors.

**Immediate relief is requested as the temple burn ceremony is scheduled for 9:00pm Saturday, November 12, 2016, and requires advance permitting by local DC Fire & EMS and federal National Park Service employees who will be out tomorrow, Friday, November 11, 2016 due to the Veteran's Day holiday**.

A Verified Complaint, Request for Summons and Supporting Affidavits are filed separately. In addition, pursuant to Local Civ. Rule 65.1, Plaintiff requests an expedited hearing for the purpose of adducing live testimony on these matters.

_____
                /s/
Robert N. Haferd (D.C. Bar No. 1013073)

LAW OFFICE OF ROBERT N. HAFERD, ESQ.
693 32nd Street
Oakland, CA 94609
Telephone: (202) 750-1665
Fax: (208) 379-8639

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of November 2016, a true copy of the

foregoing was served via electronic mail, to the following:

United States Attorney's Office
Attn.: Marina Braswell
555 4th Street, NW
Washington, DC 20530
(202) 252 – 2561
Marina.braswell@usdoj.gov

Robert A. Vogel
National Park Service
1100 Ohio Drive, SW 3rd Floor
Washington, DC 20242
(202) 208-3818
Bob_vogel@nps.gov

Department of the Interior
Office of the Solicitor
Attn: Hillary Tompkins
1849 C Street, NW
MS-6556 MIB
Washington, DC 20240
(202) 208-6677
barry.roth@sol.doi.gov


_____/S/_____

Robert N. Haferd, Esq.

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY

## RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff's temple burn ceremony, the protected speech at issue, is simply not unsafe and does not materially damage the National Mall turf.  National Park Service ("NPS") personnel and specialists were perfectly satisfied with the safety of the temple burn last year and permitted Plaintiff's activity.  Since then they have passed new internal requirements attempting to ban the Plaintiff's activity, and now claim that the activity is unsafe in order to justify their limitation on Plaintiff's first amendment expression, but the direct evidence of last year's demonstration and DC Fire & EMS's representations that the activity can be performed safely contradict this and thus demand that the NPS not be allowed to restrict Plaintiff's expression.

Catharsis on the Mall ("Catharsis" or the "Vigil") is an artistic political demonstration and vigil on the National Mall, organized by a vibrant community of volunteer activists.  The permit for this year's Catharsis is already underway, and lasts from Tuesday, November 8, 2016 through Monday, November 15, 2016.  The centerpiece of Catharsis is the temple, which is designed to reflect the Vigil's political theme and is ritually burned on Saturday night of the Vigil in an act of collective symbolic expression.  The National Park Service ("NPS") issued a First Amendment demonstration for the first Catharsis temple burn last November ("Catharsis 2015"), which was executed safely under the supervision of DC Fire & EMS, and did not cause any significant damage to the turf grass beneath.  The NPS stated afterward that Catharsis 2015 "overall was successful."

Catharsis immediately submitted a new permit application for a similar Vigil in November 2016, including another temple burn ceremony, this time dedicated to veterans and survivors of PTSD.  The NPS, however, has denied Catharsis a permit to burn its temple, pointing to its newly-adopted "Bonfire Requirements" (that it failed to disclose to Catharsis until October 2016), which

restrict, among other things, the maximum fuel size of any "ceremonial bonfire" to 5 ft. in diameter and 5 feet tall.  This size limitation is much too small for a temple burn, and so Catharsis sought exemptions to the requirements, which Defendant Vogel finally denied on Tuesday, November 8, 2016, just 4 days before the scheduled temple burn, claiming that Catharsis's proposed temple burn ceremony is too unsafe and may damage the turf grass.

NPS cannot legitimately claim that the temple burn is unsafe, after having permitted the very same activity in the very same location last year, and after it has been declared safe both this year and last by DC Fire & EMS.  NPS's additional stated concern that the temple burn will damage the National Mall turf is also insufficient to ban Catharsis's First Amendment ceremony. This is a once-a-year activity that covers a tiny area of turf.  Last year the turf was completely protected by the metal burn pad, to which Catharsis has proposed even more protective improvements for this year.  Catharsis therefore requests a temporary restraining order to enjoin NPS from banning its protected political speech of burning a ceremonial temple.  Plaintiff requests the Court to enjoin the NPS to permit Catharsis to perform a temple burn ceremony with a fuel size that is at a minimum comparable to the size of the ceremony Plaintiff was permitted to perform last year, subject again of course to it passing the DC Fire & EMS's permitting process and required safety inspection, in advance of a full evidentiary hearing on the merits.

## I.   INTRODUCTION

Today more than ever, our country desperately needs healing.  Last year, with nearly 1,000 people in peaceful attendance, the Catharsis community safely and successfully held a temple burn ceremony dedicated to healing from the War on Drugs with a structure significantly larger than the Bonfire Requirements' maximum fuel area of 5 feet in diameter and 5 feet in height.  The 2015 Temple of Essence was 10 feet in diameter, 12 feet high, had a 3x flame height audience perimeter, used paraffin to start the fire, and protected the turf with a corrugated steel burn pad.  (Declaration of M. Verdon, at ¶ 9.)  The NPS issued a First amendment permit for the 2015 ceremony and DC Fire & Emergency Medical Services ("DC FEMS") issued permits for the burn as well.  (Id. at ¶ 7.)  In accordance with Catharsis's exemplary performance last year, it should b.  The NPS, however, has denied Catharsis LLC's request for exemptions from the Bonfire Requirements, citing abstract concerns about safety and asset protection, despite its own personnel and DC FEMS's consistent statements that the temple burn can be executed without an undue safety risk to attendees and with minimal or no damage to the National Mall's turf.  (Id. at ¶ 8.)

The NPS, apparently focused on obstructing Catharsis on the Mall's countercultural political demonstration and vigil ("Catharsis" or "Vigil"), withheld from the Catharsis organizers any mention of its brand new internal (nonpublic) "Bonfire Requirements," which effectively ban the Plaintiff's central activity of the Vigil – the ceremonial burning of the temple ("Temple Burn") – until mid-October, 10 months after receiving Catharsis LLC's permit application and less than a month before the proposed permit start date.  Adding insult to injury, the NPS subsequently changed its appeal process not once, but twice, and further delayed its decision on Catharsis's request for exemptions from the newly-adopted requirements until Tuesday afternoon November

8, 2016, the same day the Catharsis demonstration permit went into effect, and just four days until the Temple Burn is scheduled, on Saturday, November 12, 2016. The NPS's inexcusable and prejudicial delay therefore necessitated the filing of the instant application.

## I.     BACKGROUND

Catharsis on the Mall ("Catharsis" or "the Vigil") is a 72-hour political demonstration and vigil for veterans' and PTSD survivors' access to the treatments they need to heal, scheduled to take place over Veteran's Day Weekend, November 11 to November 13, 2016. Catharsis is a free event, open to citizens of all ages, with a focus on community engagement, community building, and healing. Last November, the first annual Catharsis ("Catharsis 2015") took place on the north lawn of Washington Monument grounds and protested the War on Drugs. Catharsis 2015 featured speakers, performances, and art installations related to that issue, including a "Temple of Essence." The temple, designed by artist Michael Verdon and constructed of wood, transformed to resemble a prison cell when it was ceremonially-burned down the night of Saturday, November 21, 2015, to symbolize the vigil participants' call to change our system of mass incarceration. As such, Catharsis 2015 was granted a First Amendment permit by the National Park Service ("NPS"), including the temple burn ceremony ("Temple Burn") that the NPS is now attempting to ban.

This year's Vigil will take place in the same location as Catharsis 2015 and will once again include speakers and art installations, as well as a "March for PTSD Research." Like before, the central feature of the Vigil is the ceremonial "Temple of Rebirth" (the "Temple"), also designed by Mr. Verdon. The Temple resembles a Phoenix, the mythical bird symbolizing hope and rebirth, and represents the second chance at life that veterans and PTSD survivors deserve to have access to through healing modalities and research, including ones currently prohibited by government policies. Vigil participants ritually place letters and symbols inside the Temple and write messages

on its various surfaces expressing their personal struggles with trauma and PTSD, frustrations with government policy, and prayers for change.   These messages and expressions are left as offerings to be symbolically released on Saturday night, November 12, 2016, when the Temple is planned to be burned, transforming it to resemble a flaming Phoenix.

Like all temples constructed in the Burning Man artistic tradition, the purpose of the Temple of Rebirth is to be burned.  Burning the temple is what makes it a Burning Man temple. Mr. Verdon, as part of an experienced fire safety team, has successfully designed and burned over a dozen such temples, ranging in size from 10 ft. in diameter and 12 ft. in height up to 99 ft. in diameter and 82 ft. in height.  (*See* Declaration of M. Verdon, ¶ 8.)  No injuries or significant safety hazards have ever occurred during one of Mr. Verdon's temple burn ceremonies. (Declaration of M. Verdon, at ¶ 9.)

The proposed Temple dimensions are listed as 12 feet wide, 12 feet long, and 24 feet high however only a small amount of the sacred structure is actually this large. The design quickly tapers off at 6 feet in height. Almost everything above 6 feet is within a 12 feet wide by 12 feet long space. This added a great deal of interior space without widening the structure. The requested dimensions are well-within those typical of temple burns.  (Id. at ¶ 9.)  Supervising officials from DC FEMS, having reviewed Mr. Verdon's Temple specifications, updated fire safety plan and proposed Temple Burn ceremony plans, have represented at meetings with Catharsis organizers and the NPS that DC FEMS is fully-prepared to permit and supervise the Temple Burn as proposed, and have represented their confidence in the ability to perform the Temple Burn in a safe and contained manner.  (Id.)

## II.     ANALYSIS

### a.  Legal Standards

To obtain its requested preliminary injunctive relief, Catharsis must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor and (4) an injunction is in the public interest.  *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

> #### i.  Catharsis is Likely to Succeed on the Merits of its First Amendment Challenges

The Court must determine first whether Catharsis is likely to show that its First Amendment rights have been violated.  This requires the Court to "(1) assess whether the conduct or speech at issue is protected by the First Amendment, (2) identify the nature of the forum in order to determine the extent to which the government may limit the conduct or speech, and then (3) assess whether the justifications for restricting the conduct or speech satisfy the requisite standard." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 797 (1985).

First, the Temple Burn, which is the symbolic climax of the politically-themed demonstration and the central activity of the Vigil, is both political speech and expressive conduct protected by the First Amendment.  The Catharsis vigil goers are not assembling on the National Mall in the view shed of the White House and Capitol to ritually burning their messages, political statements, and artifacts in a symbolic temple because they need to stay warm – they are doing so to express themselves and communicate a collective message.  The ceremonial burning of the temple, therefore, is undeniably "conduct that is intended to be communicative and that, in context, would reasonably be understood by the viewer to be communicative." *See Clark v. Cmty. for*

*Creative Non-Violence*, 468 U.S. 288 (1984) (finding sleeping in tents for the purpose of expressing plight of the homeless to be protected activity because of its context and location on the National Mall).

Second, Catharsis's protected expression takes place on the Washington Monument Grounds of the National Mall, perhaps the most archetypical "traditional public forum" in the nation and thus a location in which restrictions on speech receive the highest scrutiny, *see Perry Local Educators' Ass'n*, 460 U.S. 37 (1983), and in which "the government must bear an extraordinarily heavy burden to regulate speech." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1022 (9th Cir.2009) (quoting *NAACP v. City of Richmond*, 743 F.2d 1346, 1355 (9th Cir.1984); *see also Watters v. Otter*, 854 F. Supp. 2d 823, 828–29 (D. Idaho 2012), opinion clarified, No. 1:12-CV-001-BLW, 2012 WL 2065549 (D. Idaho June 8, 2012) (describing the park in front of the Idaho State Courthouse as a traditional public forum, where "[t]his public open space is highly visible and physically close to the seat of [Government], making it a natural forum for political protests" and as such finding that Plaintiff Occupy Boise "will be able to show that its expressive conduct is taking place in a 'traditional public forum'").

Finally, the NPS's Bonfire Requirements, being specifically drafted to apply to only ceremonial bonfires such as Catharsis's, are content-based and therefore subject to strict scrutiny, and fail to meet its high bar for constitutionality.  Moreover, because the Bonfire Requirements are unnecessarily restrictive as applied to Catharsis's activity to address the NPS's stated interests of safety and asset protection, they fail to pass constitutional muster even if they were considered content-neutral.

1.  Strict scrutiny applies

The NPS's newly-adopted limitations on ceremonial bonfires are a transparent attempt to place retaliatory, content-based restrictions on the Vigil's central expressive activity – the ceremonial burning of the Temple.  The NPS quickly adopted the new Fire Safety Requirements in August of this year, immediately after Catharsis's first successful temple burn (which symbolized ending mass incarceration) in November 2015, and after receiving Catharsis's renewed 2016 permit application which included plans for a second temple burn.  The Bonfire Requirements have been drafted to apply to "bonfires" which it defines as "an open fire, constantly attended fire, utilized primarily for ceremonial purposes[.]"  NPS-NCR Outdoor Event & Tent Requirements, VER 8, Page 9 (Aug. 2016).  Catharsis's Temple Burn is the first and the only fire (based on Plaintiffs' research) "primarily for ceremonial purposes" permitted in the National Capital Region.  The conspicuous timing and drafting of the requirements (not to mention the statements by the NPS personnel themselves in meetings with Catharsis organizers) unmistakably reveals that they were aimed specifically at banning *this* particular expressive activity by *this* permit applicant, and accordingly must be subjected to the highest scrutiny.

In these circumstances, where "there is evidence that the State's enforcement of the recently passed [requirement] … targeted [plaintiff's] expressive conduct protected by the First Amendment[,]" strict scrutiny has been applied, "render[ing] the State's enforcement policy … presumptively invalid under the First Amendment." *Watters v. Otter*, 854 F. Supp. 2d 823, 825 (D. Idaho 2012), opinion clarified, No. 1:12-CV-001-BLW, 2012 WL 2065549 (D. Idaho June 8, 2012); *see also Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015) ("Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are

distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.").

The court need not even consider the discriminatory motives of the NPS, however, because the restrictions are in fact content-based on their face, and therefore are "presumptively unconstitutional." *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992); *see also Boardley v. U.S. Dep't of Interior*, 615 F.3d 508, 513 (D.C. Cir. 2010) ("It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable." (quoting *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129 (1992))).

The Fire Safety Requirements have been drafted to apply to "bonfires" which it defines as "an open fire, constantly attended fire, utilized primarily for ceremonial purposes[.]"  The requirement requires looking into the expressive purpose of the bonfire, i.e., whether it is ceremonial versus for some other purpose.  As such, it is a content-based restriction and subject to strict scrutiny.  As the Supreme Court reiterated just last year,

> A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of "animus toward the ideas contained" in the regulated speech. *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993). We have thus made clear that "'[i]llicit legislative intent is not the sine qua non of a violation of the First Amendment,' " and a party opposing the government "need adduce 'no evidence of an improper censorial motive.' " *Simon & Schuster*, supra, at 117, 112 S.Ct. 501. Although "a content-based purpose may be sufficient in certain circumstances to show that a regulation is content based, it is not necessary." *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 642 (1994). In other words, an innocuous justification cannot transform a facially content-based law into one that is content neutral.

*Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2228 (2015)

"Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are

narrowly tailored to serve compelling state interests." *Id.* at 2226 (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992)).

The proven "minimal impact" that the Catharsis Temple Burn has on the NPS's turf, and the minimal threat to safety it poses as certified by the DC FEMS necessitate a finding that the Bonfire Requirements are not narrowly-tailored, i.e., "necessary" to meet a compelling government interest.  Like in *Henderson v. Lujan*, 964 F.2d 1179, 1181 (D.C. Cir. 1992), in which the plaintiff successfully sued the NPS for a temporary restraining order from enforcing a regulation against pamphlet distribution, the "minimal impact" of the activity on the stated interests of the NPS does not justify the restrictions' overbroad effect.

### 2.   The requirements are not narrowly-tailored

Even if the NPS had drafted its requirements for bonfires in a content-neutral fashion – which it did not – the Fire Safety Requirements would still be impermissibly burdensome on Catharsis's expressive conduct.  It is well-settled that even a content-neutral restriction on speech "still must be 'narrowly tailored to serve a significant governmental interest.'"  *McCullen v. Coakley*, 134 S. Ct. 2518, 2534 (2014); *Ward*, 491 U.S., at 796. "For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Id.* at 2534.  "Such a regulation, unlike a content-based restriction of speech, "need not be the least restrictive or least intrusive means of" serving the government's interests. *Id.*, at 798, 109 S.Ct. 2746. But the government still "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.,* at 799, 109 S.Ct. 2746.

To the extent that the Fire Safety Requirements require a smaller, more restrictive and more burdensome Temple Burn activity than the NPS required in the Catharsis 2015 temple burn and

ceremony, they are manifestly unreasonable to serve the NPS's stated interests in safety and asset (turf) protection.

Catharsis concedes that the NPS has the authority – indeed, the duty – to regulate its jurisdictional lands.  And in doing so the NPS may place "reasonable time, place, and manner restrictions" on demonstrators' speech.  *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984).  The restrictions they have placed on this Temple Burn are patently unreasonable, as they prohibit the central symbolic speech of the Vigil (the burning of a ceremonial temple) on safety grounds despite the NPS's and DC EMS's acknowledgment that this precise activity in the precise location was done safely and successfully just one year earlier.  As stated by the Supreme Court,

> The tailoring requirement does not simply guard against an impermissible desire to censor. The government may attempt to suppress speech not only because it disagrees with the message being expressed, but also for mere convenience. Where certain speech is associated with particular problems, silencing the speech is sometimes the path of least resistance. But by demanding a close fit between ends and means, the tailoring requirement prevents the government from too readily "sacrific[ing] speech for efficiency." Riley v.  National Federation of Blind of N. C., Inc., 487 U.S. 781, 795, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988).18
> For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not "burden substantially more speech than is necessary to further the government's legitimate interests." Ward, 491 U.S., at 799, 109 S.Ct. 2746. Such a regulation, unlike a content-based restriction of speech, "need not be the least restrictive or least intrusive means of" serving the government's interests. Id., at 798, 109 S.Ct. 2746. But the government still "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." Id., at 799, 109 S.Ct. 2746.

*McCullen v. Coakley*, 134 S. Ct. 2518, 2534–35 (2014)

Catharsis requests that this Court require the NPS to adjust its requirements or provide a narrow exemption that allows Catharsis to perform its expressive activity, as the Idaho district court did in *Watters*, "so long as it does not interfere with the State's legitimate repair, maintenance, and construction activities." *Watters*, 2012 WL 2065549, at *4 (D. Idaho June 8,

2012) (citing *Clark*, 468 U.S. at 293).   As they stand the Bonfire Requirements are not "minor restrictions [that] will not unduly impede [Catharsis's] avenues for communicating its message." *Id*.  Rather, the requirements ban anything resembling the Temple Burn that stands at the core of the Catharsis community's expression.  Such a ban is patently unnecessary and overly restrictive. *See Watters v. Otter*, 854 F. Supp. 2d 823, 825–26 (D. Idaho 2012), opinion clarified, No. 1:12-CV-001-BLW, 2012 WL 2065549 (D. Idaho June 8, 2012) (where "[u]nlike the circumstances in *Clark v. Community for Creative Non–Violence*, 468 U.S. 288 (1984), where the Supreme Court approved a ban on overnight sleeping that allowed the  maintenance of a symbolic tent city, the State's enforcement policy here would ban such a symbolic display. As such, it fails to use the least restrictive means.").

ii.   Catharsis Will Be Irreparably Harmed Absent a Preliminary Injunction

Catharsis has applied in its permit application to begin setup on Tuesday, November 8, 2016 (Election Day) and the Temple Burn is scheduled for 9:00pm on Saturday, November 12, 2016.  Without the requested injunction, the Temple Burn will be banned, thus ruining a year's worth of planning irreparably.

iii.   The Balance of Equities Favor an Injunction

Catharsis, an all-volunteer, not for profit community organization, has diligently strived in good faith to meet all of the NPS's requirements, despite the failure of the Parks to act with similar consideration and organization.  Given that the need for this emergency relief at the 11th hour is manifestly the NPS's responsibility, the equities favor enjoining the NPS and allowing Catharsis

to hold its Temple Burn as it did last year, and if the NPS remains insistent on maintaining its proposed ban of the activity, then the issue may be determined at no cost to the NPS after the fac

    iv. An Injunction is in the Public Interest

  Hundreds of citizens have contributed their volunteer time to Catharsis 2016, and over a thousand citizens have already RSVP'd for the Temple Burn ceremony, in support of veterans and PTSD research and in anticipation of participating in the collective catharsis of the Temple Burn. The nation will benefit as a whole from this powerful symbolic act of love and collective healing, which DC FEMS and NPS personnel are prepared to oversee in a safe manner.  The public interest is manifestly in favor of granting the requested exemption.

## CONCLUSION

  For the foregoing reasons, a temporary restraining order and preliminary injunction is warranted to allow Plaintiff's protected expression to proceed, in advance of a full trial on the merits.

## REQUEST FOR EXPEDITED HEARING

Pursuant to Local Civ. R. 65.1, Plaintiff requests an expedited hearing within 72 hours of the filing of this application for the purpose of adducing the live testimony of the NPS's fire marshal and turf specialists and DC FEMS officials regarding the ability to perform the disputed activity safely and the ability to adequately mitigate the threats to the NPS's assets (turf grass) in performing the Plaintiff's expressive activity, and live testimony from Mr. Verdon regarding the design and specifications of the Temple, and any information about previous temple burns and the proposed Temple Burn activity.

Plaintiff acknowledges and regrets the extremely short time available to prepare for and hold a hearing, however Plaintiff respectfully asserts that, as described in the Verified Complaint and above herein, the last minute nature of NPS's denial of the proposed activity is the primary cause for this immediacy.

Dated: November 10, 2016

_____/s/_____

Robert Haferd, Esq.
Attorney for Plaintiff