UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CATHARSIS ON THE MALL, LLC,

    Plaintiff,

    v.

SALLY JEWELL, *in her official capacity as Secretary of the Interior*,

    Defendant.

Civil Action No. 16-2231 (CKK)

**MEMORANDUM OPINION**
(November 11, 2016)

Plaintiff filed suit on November 10, 2016, seeking preliminary and injunctive relief against Sally Jewell in her official capacity as Secretary of the Interior and Robert A. Vogel in his official capacity as Regional Director of the National Park Service, National Capital Region ("NPS-NCR"). Presently before the Court is Plaintiff's [2] Application for Temporary Restraining Order and Preliminary Injunction. Plaintiff raises a First Amendment challenge to Section 16 ("Bonfire Requirements") of the NPS-NCR's "Outdoor Event & Tent Requirements" both facially and as-applied to Plaintiff who sought and was denied a permit for a temple burn ceremony on the National Mall on November 12, 2016. Given the time-sensitive nature of Plaintiff's request, the Court held an on-the-record hearing with the parties on November 10, 2016, and has limited its discussion to the arguments set forth by the parties, including Plaintiff's written briefing and the Government's oral representations. In light of the information gleaned during the on-the-record hearing, the Court concluded that it obviated the need to hold an evidentiary hearing prior to issuing its ruling. Upon consideration of the pleadings, the relevant legal authorities, and the

record as a whole,[1] the Court DENIES Plaintiff's [2] Application for Temporary Restraining Order and Preliminary Injunction.

## I. BACKGROUND

The National Park Service is responsible for promoting and regulating the use of the National Park System. 54 U.S.C. § 100101. Plaintiff is a limited liability company created and maintained to serve the administrative needs involved in producing Catharsis on the Mall ("the Vigil"), an annual 72-hour vigil and political demonstration. Compl. ¶¶ 8, 11. Plaintiff held its first annual Vigil ("2015 Vigil") last year from November 20, 2015, to November 22, 2015, on the north lawn of the Washington Monument grounds. *Id.* ¶ 12. The 2015 Vigil included a "Temple of Essence," a wooden structure approximately 12 feet tall, 10 feet wide, and 10 feet long, with a single interior room resembling a prison inmate's cell, complete with wooden bed and toilet. *Id.* ¶ 13. The Temple of Essence was ceremonially burned on Saturday night of the 2015 Vigil to "symbolize the vigil participants' call to change our system of mass incarceration." *Id.* ¶¶ 13, 15.

At the time of the 2015 Vigil, NPS-NCR followed a general rule set forth in a compendium that prohibited open fires, cooking or otherwise, on all park land except East Potomac Park. The compendium also provided that a permit may be authorized to allow open fires related to demonstrations or ceremonial events. The Temple Burn at the 2015 Vigil was permitted by NPS under the general provision in the compendium, *id.* ¶ 14, and was executed as part of the 2015

---

[1] In reaching its decision, the Court considers Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction ("Pls.' TRO & PI"), ECF No. [2], Plaintiff's Verified Complaint for Preliminary and Permanent Injunctive Relief ("Pls.' Compl."), ECF No. [3], and the parties' arguments set forth during the hearing held on November 10, 2016. The Court also considers the following documents submitted to chambers at the Court's request during the hearing: NPS-NCR's "Outdoor Event & Tent Requirements" and NPS permit issued to Plaintiff dated November 10, 2016. The Court relied on notes and an unofficial transcript of the on-the-record hearing. In an exercise of its discretion, the Court finds that holding further oral argument on the instant motion would not be of assistance in rendering a decision. *See* LCvR 7(f), 65.1(d).

Vigil. Specifically, Plaintiff represents that in 2015 as part of the permit process, NPS indicated that it would issue a permit pending a safety review and inspection by D.C. Fire & Emergency Medical Services ("DC FEMS"), which ultimately deemed the Temple Burn safe.[2] The government noted at that time, NPS-NCR did not have its own Fire Marshal, but has since hired one.

In August 2016, NPS-NCR adopted "Outdoor Event & Tent Requirements" that includes, among other things, certain restrictions for bonfires. Pursuant to Section 16 of those requirements, "[a] bonfire, is an open burning fire, constantly attended outdoor fire utilized primarily for ceremonial purposes . . ." The fire safety requirements of the provision allow a maximum fuel area of 5 feet in diameter by 5 feet in height ("the size limitation"), which mirrors the size limitation in the D.C. fire code. Based on the record before the Court, it is clear that these requirements were adopted in official form in August 2016. However, at the time of the 2015 Vigil, the Government represented that NPS had a restriction on burns in draft form although the specific content of the draft version at that time is unknown. It is also undisputed that the Temple Burn completed by Plaintiff at the 2015 Vigil would not have complied with the newly-adopted size limitation restriction.

This year the Vigil ("2016 Vigil") centers on veterans' and PTSD survivors' access to treatment and is scheduled to take place from today, Friday, November 11, 2016, to Sunday, November 13, 2016, in the same location as the previous Vigil. *Id.* ¶ 11. Pursuant to the permit issued for this event, Plaintiff expects approximately 4,000 participants. At the 2016 Vigil,

---

[2] Plaintiff's briefing indicates, "The NPS issued a First amendment permit for the 2015 ceremony and DC Fire & Emergency Medical Services ('DC FEMS') issued permits for the burn as well." Pl.'s TRO & PI at 6. However, during the hearing, it was clarified that NPS was the actual entity that issued the permit for the Temple Burn after consultation with DC FEMS.

Plaintiff plans to feature a "Temple of Rebirth" that resembles a Phoenix. *Id.* ¶ 17. The Temple is larger than the one at the 2015 Vigil and measures 24 feet tall, 12 feet wide, and 12 feet long, although Plaintiff notes that "[t]he design quickly tapers off at 6 feet in height." *Id.* ¶ 19. Participants will be invited to place letters and symbols inside the Temple and write messages on the Temple regarding their personal struggles with trauma and PTSD, frustration with government policy, and prayers for change. *Id.* ¶ 17. The proposed bonfire, which is larger than the 2015 Temple Burn, exceeds the size limitation set forth in Section 16 of NPS's recently-adopted Requirements ("Bonfire Requirements").

Plaintiff sought and was denied a permit by NPS to set the Temple on fire on November 12, 2016, at 9:00 p.m. *Id.* ¶¶ 20-30. Though not expressly provided for in the restrictions, Plaintiff sought an exemption to the newly-adopted size limitation on bonfires in order to proceed with its Temple Burn as planned. On November 8, 2016, Plaintiff was informed at a meeting by Robert A. Vogel, Regional Director of NPS, that its request for an exemption to the restriction was denied due to safety concerns and concerns about turf protection. *Id.* ¶¶ 28, 29. Present at the meeting were: Vigil organizers; Regional Director Vogel; Superintendent Gay Vietzke; Chief of Permits Division Robbin Owen; NPS-NCR Fire Marshals Jim King and Raul Castille; NPS's turf specialists for the region, Michael Stachowicz; and DC FEMS officials Captain Jerome Young, Sergeant Robert Kearney, and Lieutenant Aaron Hazel. *Id.* ¶ 28.

In lieu of taking live testimony on the pending motion, the parties accepted during the hearing the following representations would have been made regarding that meeting:

> When questioned as to whether the proposed temple burn was safe, DC Fire & EMS Sergeant Robert Kearney stated, without reservation that 'the fire can be done safely.' He stated, however, that DC FEMS required approval of the NPS before it could endorse the activity. The other two DC FEMS officers expressed the same position, stating that 'We [DC FEMS] can put this fire out, but we need the other agency's consent.' NPS Assistant Fire Marshall [sic] Castillo expressed concerns

4

> that the temple burn is unsafe. When asked for specifics, he mentioned the possibility of 'fly embers' and 'it [the fire] could distract traffic." NPS Fire Marshall [sic] King also expressed that he did not feel the fire could be done safely. When Mr. King was asked about what the differences were between the National Mall and the much larger temples permitted and burned safely each year with similarly-sized perimeters and open areas in the Black Rock Desert, he stated that weather was different and that the two places cannot be compared. No specific explanation was given as to why the NPS's turf protection concerns remain despite the existence of a burn pad.

*Id.* ¶ 30. As such, for the purposes of this analysis, it is undisputed that DC FEMS officials have indicated that they can extinguish the fire if the need arises, but that NPS is the entity that must issue the permit to authorize the burn. Second, it is undisputed that the NPS Fire Marshal expressed his view that the proposed burn could not be done safely.

The parties do not contest that Plaintiff's proposed Temple Burn at the 2016 Vigil exceeds the size limitation of Section 16 of NPS-NCR's "Outdoor Event & Tent Requirements," and NPS has indicated that it would issue a permit to Plaintiff for the 2016 Vigil to complete a burn that comports with the Bonfire Requirements, including the size limitation. Plaintiff asserts that the Bonfire Requirements violate the First Amendment on its face and as applied to Plaintiff. Plaintiff seeks a temporary restraining order and preliminary injunction from the Court enjoining Defendant from enforcing the Bonfire Requirements of Section 16 against Plaintiff and permitting Plaintiff to perform its proposed burn of the "Temple of Rebirth" on November 12, 2016, at 9:00 p.m.

## II. LEGAL STANDARD

A temporary restraining order or preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the

5

movant, by a clear showing, carries the burden of persuasion." (emphasis in original; quotation marks omitted)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley*, 644 F.3d at 392 (quoting *Winter*, 555 U.S. at 20) (alteration in original; quotation marks omitted)). "'When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction.'" *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)). "The four factors have typically been evaluated on a 'sliding scale.'" *Davis,* 571 F.3d at 1291 (citation omitted). Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291-92.

The Court notes that it is not clear whether this Circuit's sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter*. *See Save Jobs USA v. US. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015). Several judges on the United States Court of Appeals for the D.C. Circuit have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley*, 644 F.3d at 393 (quoting Davis, 571 F.3d at 1296 (concurring opinion)). However, the Court of Appeals has yet to hold definitively that *Winter* has displaced the sliding-scale analysis. *See id.*; *see also Save Jobs USA*, 105 F. Supp. 3d at 112. In any event, this Court need not resolve the viability of the sliding-scale approach today as the Court determines

that "a preliminary injunction is not appropriate even under the less demanding sliding-scale analysis." *Sherley*, 644 F.3d at 393.

### III. DISCUSSION

**A. Likelihood of Success on the Merits**

Plaintiff challenges the size limitation on bonfires adopted by NPS-NCR in August 2016, as part of its "Outdoor Event & Tent Requirements" ("Bonfire Requirement"). Plaintiff brings both a facial and as-applied challenge to the constitutionality of the Bonfire Requirement, although Plaintiff's briefing does not fully develop its facial challenge and Plaintiff does not distinguish between the two challenges. The parties dispute the appropriate level of scrutiny that applies to Plaintiff's First Amendment claim. Plaintiff asserts that the Bonfire Requirement is a retaliatory, content-based restriction subject to strict scrutiny. Defendant argues that the Bonfire Requirement is a valid time, place, and manner restriction that survives intermediate scrutiny. For the reasons described herein, the Court finds that Plaintiff has failed to demonstrate a likelihood of success on the merits because the Bonfire Requirement appears to be a valid time, place, and manner restriction that is narrowly tailored to serve the significant governmental interest of public safety, and because it appears that the Bonfire Requirement is valid on its face.

In order to determine whether there has been a violation of the First Amendment, the Court must "(1) assess whether the conduct or speech at issue is protected by the First Amendment, (2) identify the nature of the forum in order to determine the extent to which the government may limit the conduct or speech, and then (3) assess whether the justifications for restricting the conduct or speech satisfy the requisite standard." *Watters v. Otter*, 854 F. Supp. 2d 823, 828 (D. Idaho 2012), *opinion clarified*, No. 1:12-CV-001-BLW, 2012 WL 2065549 (D. Idaho June 8, 2012) (citing *Cornelius v. NAACP Legal Defense and Educational Fund*, Inc., 473 U.S. 788, 797 (1985)).

7

For the purposes of this analysis, the Court accepts that Plaintiff's proposed Temple Burn at the 2016 Vigil is expressive conduct protected to some extent by the First Amendment and that the National Mall, the proposed location of the Temple Burn, is a public forum.  However, even in a public forum the government may impose reasonable time, place, or manner restrictions on oral, written, or symbolic expression.  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).  To determine whether a particular time, place, or manner restriction passes constitutional muster, a court must first determine whether a particular restriction is content-based or content-neutral as this determination dictates the appropriate level of scrutiny to apply.  The Supreme Court of the United States ("Supreme Court") explained:

> The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.  The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is '*justified* without reference to the content of the regulated speech.'

*Ward*, 491 U.S. at 791 (internal citations omitted).  If a time, place, or manner restriction is content-neutral, it is valid provided that it is "narrowly tailored to serve a significant governmental interest, and that [it] leave[s] open ample alternative channels for communication of the information." *Clark*, 468 U.S. at 293.

Here, Defendant asserts that the government's purpose in adopting the Bonfire Restriction is to protect the safety of public, including the Vigil participants.  This governmental purpose is unrelated to the content of Plaintiff's expression and the safety provisions apply equally to all groups who seek to build bonfires in the designated areas regardless of their message. *See Ward*, 491 U.S. at 791 (noting that a justification that has nothing to do with content satisfies the

requirement that a time, place, or manner regulation must be content neutral). As such, based on the record before the Court at this time, it appears that the Bonfire Restriction at issue is content neutral. The fact that the Bonfire Restriction has some effect on Plaintiff's expressive activity does not undermine this conclusion. Indeed, as the Supreme Court recognized, "reasonable time, place, or manner regulations normally have the purpose and direct effect of limiting expression but are nevertheless valid." *Clark*, 468 U.S. at 295.

The Court must next consider whether the Bonfire Restriction is narrowly tailored to serve a significant governmental interest and if it leaves open ample alternative channels for communication of the information. The Court finds the Supreme Court's opinion in *Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984), instructive on this issue. In *Clark*, a group sought NPS permits to conduct a wintertime demonstration to demonstrate the plight of the homeless in Lafayette Park and on the National Mall. *Id.* at 291-92. NPS granted a permit that authorized the erection of two symbolic tent cities, one at Lafayette Park with 20 tents that would accommodate 50 people and one on the Mall with 40 tents that would accommodate 100 people. *Id.* at 292. However, NPS, relying on a regulation prohibiting camping in these two areas, denied the group's request that demonstrators be permitted to sleep in the tents. *Id.* The group raised a First Amendment challenge to the application of the no-camping regulations to their proposed demonstration. *Id.*

In *Clark*, the Court found that the no-camping regulation "narrowly focuses on the Government's substantial interest in maintaining the parks in the heart of our Capital in an attractive and intact condition, readily available to the millions of people who wish to see and enjoy them by their presence." *Id.* at 296. The Court rejected the demonstrator's argument that

the regulation should not apply to them because other than sleeping, they did not intend to engage in other "camping activities" like cooking or digging, explaining:

> Perhaps these [government] purposes would be more effectively and not so clumsily achieved by preventing tents and 24–hour vigils entirely in the core areas. But the Park Service's decision to permit nonsleeping demonstrations does not, in our view, impugn the camping prohibition as a valuable, but perhaps imperfect, protection to the parks. If the Government has a legitimate interest in ensuring that the National Parks are adequately protected, which we think it has, and if the parks would be more exposed to harm without the sleeping prohibition than with it, the ban is safe from invalidation under the First Amendment as a reasonable regulation of the manner in which a demonstration may be carried out. As in City Council of Los Angeles v. Taxpayers for Vincent, the regulation 'responds precisely to the substantive problems which legitimately concern the [Government].'

*Id.* at 297 (quoting *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 810 (1984)).

Turning to the instant action, it is the Court's view that the government has advanced a more significant interest in adopting the Bonfire Restriction than in *Clark*. As a practical matter, the burning of fires on the National Mall is inherently more dangerous than permitting demonstrators to sleep on the Mall. Here, the government has a substantial interest in maintaining the safety of those who visit the National Mall and in protecting National Parks. *See id.* at 291 (recognizing the National Mall as "unique resource[] that the Federal Government holds in trust to the American people" that is "visited by vast numbers of visitors from around the country, as well as by large numbers of residents of the Washington metropolitan area."). The Bonfire Restriction is narrowly tailored to address that substantial government interest. Indeed, NPS has determined that it will permit the burning of bonfires on the National Mall but has simply sought to control the manner in which these fires are set and maintained. One such restriction is the inclusion of a limitation of the size of the maximum fuel area, which specifically mirrors the size limitation in the D.C. fire code, to advance its content-neutral goal of ensuring public safety.

In the instant action, NPS has issued a permit for Plaintiff to engage in other expressive activity on the National Mall, including a ceremonial vigil sequence commencing with a sneakpeak press event on November 10, 2016, a ceremony with dancers, art, activities, and installations on November 11, 2016, and a sunrise ceremony, march, and potluck picnic on November 12, 2016. Moreover, Defendant indicated that it is willing to issue Plaintiff a permit for the Temple Burn if it complies with the size limitations of the Bonfire Restriction. Notably, Plaintiff only asserts that its expressive conduct is limited by *size* of the bonfire it would be permitted to burn at its Vigil. Here, the Court finds that Plaintiff has not demonstrated a substantial likelihood of success on the merits because, at least on this record, the Bonfire Restriction appears to be a valid time, place, or manner restriction both on its face and as applied, is narrowly tailored to serve the significant governmental interest of public safety, and leaves open ample alternative channels for communication of Plaintiff's information.

In the interest of completeness, the Court shall briefly address several arguments raised by Plaintiff with respect to its likelihood of success on the merits. Plaintiff asserts that the Bonfire Restriction is content-based and, accordingly, requires the Court to apply strict scrutiny, for two reasons: (1) because the Regulation was specifically drafted to apply only to ceremonial bonfires; and (2) because the Regulation was adopted in retaliation for Plaintiff's 2015 Temple Burn. Plaintiff also asserts that the Bonfire Restriction does not pass constitutional muster because the proposed Temple Burn can be completed safely as evidenced by the Temple Burn at the 2015 Vigil and based on the representations of DC FEMS officials.

Turning first to Plaintiff's argument that the Bonfire Restriction is content-based, "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, - U.S. -,

11

-, 135 S. Ct. 2218, 2227 (2015). In conducting this analysis, a court must "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose." *Id.* Here, Plaintiff appears to assert that the Bonfire Restriction is content-based on its face because it only applies to ceremonial bonfires. However, the regulation at issue indicates that "[a] bonfire, is an open burning fire, constantly attended outdoor fire utilized *primarily for ceremonial purposes* . . . ." The Bonfire Restriction acknowledges that bonfires are primarily used for ceremonial purposes but does not limit the definition to only those fires that are used for ceremonial, and not for some other, purpose. Indeed, the Title of the Section 16 is "BONFIRE/*RECREATIONAL FIRES* . . . ."[3] As such, the Court rejects Plaintiff's argument that the inclusion of the reference to "ceremonial purposes" within the Bonfire Restriction renders it content-based on its face.

Plaintiff also asserts that the Bonfire Restriction is content-based because it was specifically adopted in response to its Temple Burn during the 2015 Vigil. Indeed, facially content-neutral regulations may nonetheless be content-based if they "were adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Id.* at 2227 (quoting *Ward*, 491 U.S. at 791). The record at least at this time does not support this contention. Defendant represented that at the time of the 2015 Vigil, NPS had a restriction on burns in draft form although the specific content of the draft version at that time is unknown. However, Plaintiff

---

[3] Plaintiff asserts that this case is a content-based restriction based on the Supreme Court's analysis in *Reed*, 135 S. Ct. 2218. However, *Reed* is distinguishable. In *Reed*, the Court found a town code that distinguished between "Temporary Directional Signs," "Political Signs," and "Ideological Signs" based on the *message* of a particular sign to be content based. Unlike the code at issue in *Reed*, the Bonfire Restriction does not distinguish between the message that a proposed bonfire conveys.

contends that the real impetus of enacting the Bonfire Restriction at issue was its 2015 Vigil and that officials have made this representation. As such, Plaintiff argues that the Restriction was targeted specifically at Plaintiff's annual event. Defendant sets forth that other groups, although not recently, have sought permits to complete burns in National Parks and that even if the Temple Burn at the 2015 Vigil sparked the need to enact a Bonfire Restriction, it was not because of Plaintiff's particular message. The Court agrees based on this record. Indeed, the Bonfire Restriction is one part of a comprehensive set of requirements adopted by NPS-NCR addressing a range of safety issues, including temporary tents, cooking booths, exit and emergency signage, fire extinguishers, portable heaters and generators, and fire hydrants. Based on this record, the Court cannot conclude that Plaintiff has demonstrated that the Bonfire Restriction was specifically targeted at its event such that it is a content-based regulation.[4] However, the Court notes that even if it were to apply strict scrutiny as advanced by Plaintiff, the government interest in protecting the safety of the public is a substantial one and it appears that the NPS Fire Marshal expressed safety concerns specific to Plaintiff's proposal for the Temple Burn at the 2016 Vigil.

      Plaintiff next argues that even if the Court determines, as it has here, that intermediate scrutiny is applicable, the Bonfire Restriction is impermissibly burdensome on Plaintiff's expressive conduct. Plaintiff contends that its proposed Temple Burn is safe in light of its

---

[4] Plaintiff's reliance on *Watters*, 854 F. Supp. 2d 823, *opinion clarified*, No. 1:12-CV-001-BLW, 2012 WL 2065549, is not persuasive. In *Watters*, the U.S. District Court for the District of Idaho granted a preliminary injunction against the state from removing a symbolic tent city that was part of Occupy Boise, but denied the request as to camping, sleeping, or storing camping-related personal property at the site. The *Watters* Court found that the statute at issue did not permit the state to remove the symbolic tents and that the state's removal of the tents was "content-based enforcement" beyond its statutory authority. Notably, the *Watters* Court relying on *Clark* denied the request for an injunction with respect to the restrictions on camping, sleeping, or storing camping-related personal property at the site. Here, there is no dispute that Plaintiff's proposed Temple Burn does not meet the requirements of the Bonfire Restriction and, as such, Plaintiff cannot demonstrate that the government is participating in "content-based enforcement."

successful completion of a Temple Burn during the 2015 Vigil and because DC FEMS officials have expressed their ability to extinguish the proposed Temple Burn at the 2016 Vigil if the need arose.  The Court is not persuaded by Plaintiff's argument for the following reasons.  First, the proposed Temple Burn this year is significantly larger than the Temple Burn at the 2015 Vigil.  Indeed, the 2016 structure is double the height of the 2015 structure and will result in approximately 75% greater bonfire size from the 2015 structure. Pl.'s TRO & PI, Ex. 1 ¶ 11 (Decl. of Michael Verdon).  The fact that there was no damage caused by the Temple Burn last year is not indicative of the fact that there will be no issue this year.  Second, on the record before the Court at this time, there appears to be, at best, conflicting information regarding the safety of completing the proposed Temple Burn.  Indeed, DC FEMS officials have expressed that they can extinguish the fire if the need arises, but have expressly indicated that they defer to NPS regarding the issuance of permits to authorize the fire.  NPS has enacted a regulation and Plaintiff's proposal does not comply with that regulation.  The NPS Fire Marshal has reviewed Plaintiff's proposed Temple Burn and expressed safety concerns specific to that proposal and, as such, has declined to issue a permit.

In essence, Plaintiff appears to be asking the Court to conclude that Defendant must revert to its earlier policy of generally banning fires altogether but granting exemptions in some instances (and, presumably, that NPS must grant an exemption in this particular circumstance).  "[T]hese suggestions represent no more than a disagreement with the Park Service over how much protection the core parks require or how an acceptable level of preservation is to be attained." *Clark*, 468 U.S. at 299.  This Court's application of the First Amendment to the instant facts  does not "assign to the judiciary the authority to replace the Park Service as the manager of the Nation's parks or endow the judiciary with the competence to judge how much protection of park lands is

wise and how that level of conservation is to be attained." *Id.* Accordingly, the Court concludes that Plaintiff has failed to establish a substantial likelihood of success on the merits both facially and as applied and this factor tips in favor of denying Plaintiff's request for preliminary relief.

### B. Irreparable Harm

In its briefing, Plaintiff argues that it will suffer an irreparable harm if the request for a preliminary injunction is denied because "the Temple Burn will be banned, thus ruining a year's worth of planning irreparably." Pl.'s PI & TRO at 15. While it appears that Plaintiff will suffer some harm if it is not permitted to execute its Temple Burn in the manner it planned, the Court is not convinced that this meets the "high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Indeed, Defendant has indicated that it will permit Plaintiff to conduct a burn as part of its event, but the burn must meet the size limitations of the Bonfire Restriction. As such, the Court concludes that this factor is in equipoise.[5]

### C. Public Interest and Balance of Equities

In evaluating a request for preliminary relief, the Court "'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular

---

[5] The Court does not consider the argument that Plaintiff has demonstrated irreparable injury because it has alleged a threatened constitutional deprivation, because this argument has not been advanced by Plaintiff. *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013). However, the Court notes that even if it were to accept that Plaintiff has demonstrated that it will suffer an irreparable injury if relief is not granted, it would not alter the Court's conclusion that preliminary relief should be denied in light of its balancing of the four factors including the Court's finding regarding Plaintiff's failure to demonstrate its likelihood of success on the merits. *See Wrenn v. District of Columbia*, 167 F. Supp. 3d 86, 103 (D.D.C. 2016) ("[A]n alleged constitutional violation may be enough to satisfy the irreparable injury prong. However, such an allegation is not determinative of the Court's assessment of the balance of the equities or of the impact on the public interest or, ultimately, of the outcome of the preliminary injunction analysis.").

regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Plaintiff argues that the balance of equities tips in favor of granting its request for an injunction because it is "an all-volunteer, not for profit community organization, [that] has diligently strived in good faith to meet all of NPS's requirements, despite the failure of the Parks to act with similar consideration and organization." Pl.'s TRO & PO at 15. Plaintiff also argues that it is in the public interest to grant its request because "[t]he nation will benefit as a whole from this powerful symbolic act of love and collective healing." *Id.* at 16. Defendant argues that these factors favor denying the request for a preliminary relief because of the interest in ensuring that there is not a burn that is larger than one which has been deemed to be safe by NPS.

Here, Plaintiff has advanced an interest in using its proposed Temple Burn to communicate its message related to veterans' and PTSD survivors' access to treatment. Defendant also has advanced an interest in protecting the public safety by restricting the size of bonfires on the National Mall. Accordingly, the Court finds these factors are in equipoise.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to establish that it has a substantial likelihood of success on the merits. Moreover, the Court finds that the factors of irreparable harm, balance of equities, and the public interest are in equipoise. Accordingly, the Court DENIES Plaintiff's [2] Application for Temporary Restraining Order and Preliminary Injunction.

An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge